## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY CRUDUPT,** | : | **CIVIL NO. 1:09-CV-0331** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SUPERINTENDENT PAUL** | : | |
| **SMEAL, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

On February 19, 2004, Timothy Crudupt, a 42-year old man, took a 13-year old girl to a motel in Monroe County, and engaged in an alcohol-fueled sexual encounter with this minor. (Doc. 1, Ex B.) On March 19, 2004, Crudupt, accompanied by his fiancee and her infant son, met with state police investigators to discuss his sexual encounter with this 13-year old girl. (Id.) In the course of this interview Crudupt admitted taking this girl to a motel and paying her to perform sex acts upon him. (Id.)

Crudupt was charged for his admitted involvement in this sexual activity with a minor, was tried in September 2004, and was convicted. (Doc. 1.) On December 15, 2004 Crudupt was sentenced to seven and one-half to fifteen years imprisonment. (Id.) Crudupt pursued a direct appeal of this conviction to the Pennsylvania Superior Court, which affirmed his conviction and sentence on March 22, 2006. Commonwealth v. Crudupt, 898 A.2d 1126 (Pa. Super. 2006). The Pennsylvania Supreme Court then

denied review of this case on August 24, 2006. <u>Commonwealth v. Crudupt</u>, 906 A.2d 538 (2006).

Undeterred, Crudupt filed a petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq., challenging this conviction. That petition was heard and carefully considered by the Court of Common Pleas of Monroe County, which denied Crudupt's petition on May 10, 2007, following a full evidentiary hearing into Crudupt's claims. (Doc.1, Ex. A.) Crudupt appealed this adverse ruling to the Pennsylvania Superior Court, which affirmed the denial of the petition in a February 5, 2008 opinion. (Doc. 1, Ex. B.)

Crudupt now comes before this Court, having filed a petition for writ of habeas corpus on February 5, 2009. (Doc. 1.) In this petition Crudupt claims that his conviction for his admitted involvement in an episode of commercial sexual exploitation of a 13-year girl was the product of prosecutorial over-reaching and ineffective assistance of his trial counsel. (Doc. 1.)

We disagree. For the reasons set forth below, we believe that Crudupt's conviction is the result of his own words and actions, words and actions which present an amoral, and criminal, picture of this offender. More fundamentally, we find nothing to support Crudupt's claims with respect to the prosecution or defense of this case that

would warrant federal habeas relief. Therefore, we recommend that this petition for writ of habeas corpus be denied.

## II.    <u>Statement of Facts and of the Case</u>

The case of Timothy Crudupt tells the tawdry story of sexual exploitation of a 13-year old girl by a middle-aged man. In February of 2004 Crudupt was a 42-year old man. On February 19, 2004, Crudupt, accompanied by a 19-year old man, Matthew Greloch, traveled to the home of the victim, B.V., who was then 13 years old. Crudupt and his 19-year old male companion then took this 13-year old girl to a movie. (Doc. 9. Exs. 8 and 9) Following this movie, Crudupt bought sandwiches and beer for the girl, and the evening began taking on a dark and sexually exploitive aspect with Crudupt telling the victim, "I took you to the movies, and I did what you want to do. Now just do what I want to do."(<u>Id.</u> at 26.)

Crudupt, Greloch, and the 13-year old girl then traveled to a motel in Stroudsburg, where Crudupt rented a room.  Inside the motel room, Greloch, who had been drinking heavily, became ill and excused himself to the bathroom. (<u>Id.</u>) While Greloch was in the motel bathroom, Crudupt engaged in a sexual assault upon B.V. According to the victim, Crudupt forced himself upon her, and engaged in sexual intercourse. (<u>Id.</u>) For his part, Crudupt later  admitted to a sexual encounter with this 13-year old girl in the motel room, but claimed that he simply paid this child to

perform oral sex upon him. (Id.) Crudupt's sexual encounter with the victim was corroborated, in part, by Greloch, the young man who had accompanied them to the motel room. Greloch confirmed that he, Crudupt and the victim had gone to the movies, drunk beer provided by Crudupt and checked into the motel. (Id.) While Greloch was not present when the sexual assault occurred because he was ill in the motel bathroom, he recounted that when he eventually emerged from the bathroom, Crudupt and the 13 year old girl were together in the motel room and the victim looked upset. (Doc. 1, Ex B.)

Following this sexual assault, Crudupt gave the victim $25 and then drove her home. ( Doc. 9 , Exs. 8 and 9, at 31-33. ). Upset, the victim confided in a friend, describing this assault. That friend then told the victim's parents, who in turn contacted the police. ( Id.)

An investigation ensued. As part of that investigation Crudupt was interviewed by State Police investigator Shawn Noonan, on March 19, 2004. This interview was conducted at the state police barracks, and Crudupt was accompanied to the interview by his fiancee, and her infant son. According to trooper Noonan, at the outset of the interview Crudupt was advised of his Miranda rights and agreed to speak with the police. Crudupt then admitted that, on February 19, 2004, he took the victim and Greloch to the movies, and checked into a local motel. While Crudupt could not recall

the name of the motel, he did recall for the trooper what transpired in the motel room he had entered with this 13-year old girl. According to Trooper Noonan, Crudupt denied raping the girl, but admitted that he paid this child to perform oral sex upon him. (Id. at 92.)

Crudupt was then charged with rape, statutory sexual assault, sexual assault, indecent assault on a minor, corruption of a minor, unlawful contact with a minor, and involuntary deviate sexual intercourse. Crudupt's case proceeded to trial on September 2, 2004.

Following jury selection in this case, Crudupt presented his counsel with previously undisclosed evidence that he had in his possession. Specifically, Crudupt tendered to his attorney tapes, which he claimed were recordings of Crudupt and the victim discussing going to a motel room, tapes that Crudupt alleged had been made surreptitiously at the time of this February incident. While Crudupt's description of the genesis and provenance of these tapes changed over time, strained credulity, and could not be separately corroborated by counsel, basically, Crudupt claimed that he had discovered the tapes three weeks after the incident occurred but inexplicably elected to hide their existence from his own counsel until jury selection.

Confronted by this last minute production of evidence, defense counsel acted prudently and with dispatch, making a motion *in limine* to allow him the option to use

the evidence in this case. While this motion which was granted in Crudupt's favor, defense counsel elected not to utilize this evidence at trial. This decision reflected a seasoned assessment by counsel that the late disclosure of the evidence, coupled with its questionable authenticity and provenance would cast Crudupt in an unfavorable light. Moreover, counsel recognized that the act of secretly recording a discussion about a motel room encounter with a 13-year old girl could prejudice a jury against his client. Finally, counsel understood that, while the tape might cast the girl in an unfavorable light, it would also corroborate important aspects of the government's case, by confirming that Crudupt and the girl went to the motel for a sexual assignation.

At trial, the victim testified describing her February 2004 sexual encounter with Crudupt. According to the victim, she had met Crudupt shortly before this incident. From the outset, Crudupt had expressed a sexual interest in the victim, saying that he wanted to kidnap her (Id. at 23), and lying to the victim about his age, falsely claiming that he was 25 years old. (Id. at 24).

On February 19, 2004, the victim described how Crudupt took her and Matthew Greloch to the movies, and then bought them beer. (Id. at 25-6). Crudupt then took the victim and Greloch to a local motel, telling the victim, "I took you to the movies, and I did what you want to do. Now just do what I want to do." (Id. at 26.) The victim then

described in detail her sexual encounter with Crudupt. (Id. at 27-31.) Following this episode the victim related that Crudupt paid her $25, took her home, and voiced a desire to see her again. (Id. at 31-33.) Upset, the victim reported this incident to a friend, Christina Greloch (Id. at 33.)

While the victim was subjected to searching and effective cross-examination (Id. at 34-57), the substance of her testimony was corroborated in three ways at trial. First, Matthew Greloch, the 19-year old who accompanied the victim and Crudupt to the motel room testified and confirmed that he, Crudupt and the victim had gone to the movies, drunk beer provided by Crudupt and checked into the motel. While Greloch was not present when the sexual assault occurred because he was ill in the motel bathroom, he recounted that when he eventually emerged from the bathroom, Crudupt and the 13-year old girl were together in the motel room and the victim looked upset. (Id. at 57-73.) Christina Greloch, a friend of the victim also testified to prior consistent statements made by B.V. shortly after the assault, statements  reporting that she had been sexually abused by Crudupt. (Id. at 74-78.)

Finally Trooper Shawn Noonan of the Pennsylvania State Police testified regarding his March 19 interview with Crudupt in which Crudupt admitted that, on February 19, 2004, he took the victim and Greloch to the movies, and then checked into a local motel. According to Trooper Noonan, Crudupt denied raping the girl in the

motel room, but admitted that he paid this child to perform oral sex upon him. (Id. at 92.)

For his part, at trial Crudupt endeavored through counsel to vigorously challenge the credibility of these witnesses, and to further sow seeds of doubt by highlighting contradictions in their statements, including contradictions regarding the location of the motel where this alleged assault took place. (Id. at 116-123.) The defense further emphasized this theme in its closing argument to the jury (Id. at 132-36), a defense strategy which led the Commonwealth to argue over Crudupt's objections, that the precise location of the motel was irrelevant, provided the jurors found that beyond a reasonable doubt, and consistent with the statements of both Crudupt and the victim, that a sexual encounter occurred at some Monroe County motel in February 2004. (Id. at 139-40.)

At the close of all of the evidence, the jury returned a verdict convicting Crudupt of sexual assault, indecent assault on a minor, corruption of a minor, unlawful contact with a minor, and involuntary deviate sexual intercourse, but acquitting him on charges of rape and statutory sexual assault. On December 15, 2004 Crudupt was sentenced to seven and one-half to fifteen years imprisonment on these convictions.

After exhausting his direct appeals of this conviction, Crudupt filed a petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541

et seq., challenging his conviction. That petition was heard and carefully considered by the Court of Common Pleas of Monroe County, which conducted a full evidentiary hearing into Crudupt's claims that his trial counsel was ineffective and the Commonwealth was over-reaching in its prosecution of this case. In the course of this hearing, the state trial judge took testimony both from Crudupt and from his former trial counsel, an attorney that the court found to be "an extremely credible witness". (Doc. 1, Ex. B, p.4.)

Following this hearing on May 10, 2007, the trial judge entered an opinion and order denying Crudupt's PCRA petition. (Doc. 1, Ex. A.) In this opinion the court resolved many of Crudupt's disputed claims regarding the effectiveness of counsel on credibility grounds, finding that Crudupt's factual assertions, which were contradicted by his counsel, lacked credibility. (Id.) The trial judge went on to reject Crudupt's assertion that counsel was ineffective for failing to seek a bill of particulars precisely identifying the location of the motel where this sexual encounter occurred, finding that the failure to request a bill of particulars did not prejudice the Defendant or undermine the truth determining process. (Id. at 8.) Similarly the trial judge rejected Crudupt's assertion that counsel was ineffective for failing to play the tape recording which Crudupt had produced at trial, noting that the judgment of counsel in this regard was

a rational strategic and tactical decision given the doubtful provenance of the tape, and its potentially prejudicial content. (Id.at 9-10.)

Crudupt then appealed this ruling to Pennsylvania's Superior Court, which affirmed the denial of the PCRA petition in an opinion issued on February 5, 2008. (Doc. 1, Ex. B.) Having exhausted his state remedies, Crudupt filed this habeas petition in federal court. (Doc. 1.) In his habeas petition Crudupt advances four claims. First, he asserts that he is entitled to a judgment of acquittal on the charge of involuntary deviate sexual intercourse because the Commonwealth failed to prove this offense at trial. Second, Crudupt complains that he was unfairly prejudiced by the Commonwealth's argument at trial that the precise location of the motel where the assault occurred was irrelevant, provided the jurors found that beyond a reasonable doubt, and consistent with the statements of both Crudupt and the victim that a sexual encounter occurred at some Monroe County motel in February 2004. Finally in his petition Crudupt contends that his counsel was ineffective for: (1) failing to file a motion for bill of particulars; and, (2) failing to play the tape recording of the victim which Crudupt first produced at the time of trial.

These contentions have been fully briefed and are now ripe for resolution. For the reasons set forth below, we recommend that the Court find that Crudupt's claims are meritless and deny this petition for writ of habeas corpus.

III. **Discussion**

A.  **State Prisoner Habeas Relief–The Legal Standard.**

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b)

1.  **Substantive Standards For Habeas Petitions**

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may

"entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

**2.     Legal Standards Governing Challenges to the Competence of Counsel**

These guiding legal standards, which reserve habeas relief for fundamental denial of rights, extend to habeas claims premised upon alleged ineffective assistance of counsel. A defendant like Crudupt faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel.  As the Supreme Court has noted:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the results unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, Crudupt must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance. With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential, " Id. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Applying this deferential standard, courts have frequently rejected ineffective assistance of counsel claims like those advanced in this case.

### 3. Deference Owed to State Court Rulings.

These same principles which inform the standard of review in habeas petitions and limit habeas relief to profound errors of a constitutional dimension also call upon

federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal

proceedings. <u>See, e.g.</u>, <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734-35 (1990).

These deferential standards of review also guide our assessment of the legal claims advanced here by Crudupt. Thus, the state court factual findings in this case are presumed correct unless Crudupt can show by clear and convincing evidence that these findings were erroneous. Moreover, the state courts' decisions applying the Supreme Court's <u>Strickland</u> standard for assessing the competence of counsel must be upheld unless it can be shown that these decisions were either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. §2254(d)(1); or (2) were "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. §2254(d)(2). <u>See, e.g.</u>, <u>Roland v. Vaughn</u>, 445 F.3d 671, 677-78 (3d. Cir. 2006) (applying § 2254 (d) standard of review to ineffectiveness claim analysis); <u>James v. Harrison</u>, 389 F.3d 450, 453-54 (4th Cir. 2004)(same).

## B. <u>Crudupt's Habeas Claims Are Meritless</u>

### 1. <u>The Evidence Fully Supports Crudupt's Conviction for Involuntary Deviate Sexual Intercourse</u>

Applying these legal benchmarks, it is apparent that Crudupt's contentions in this petition do not meet the demanding legal standard which justifies habeas relief.

At the outset, Crudupt's first contention, that the Commonwealth's evidence failed as a matter of law to establish proof of involuntary deviate sexual intercourse under Pennsylvania law, clearly fails. With respect to such a claim, it is well-settled that:

> [I]n reviewing the sufficiency of the evidence, "we review the evidence in the light most favorable to the government as verdict winner." United States v. Applewhaite, 195 F.3d 679, 684 (3d Cir.1999) (citing United States v. Stansfield, 101 F.3d 909, 911 (3d Cir.1996)). In other words, "[o]ur review of the sufficiency of the evidence after a guilty verdict is 'highly deferential.' " United States v. Hodge, 321 F.3d 429, 439 (3d Cir.2003) (quoting United States v. Hart, 273 F.3d 363, 371 (3d Cir.2001)). "We must affirm the convictions if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir.1995).

United States v. Augustin, 376 F.3d 135, 138 (3d. Cir. 2004).

While Crudupt devotes great attention in his petition to this argument, focusing on discrepancies in proof regarding the precise location of this sexual encounter, and highlighting alleged inconsistencies in proof at trial (Doc. 15), none of these complaints justifies setting aside the jury's verdict when we consider "if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and [if] the verdict is supported by substantial evidence." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir.1995).

Judged against this controlling legal standard, the jury's verdict convicting Crudupt of involuntary deviate sexual intercourse is both rational and fully supported

by the evidence. Indeed, to convict Crudupt of this charge the jury need only have accepted his version of events regarding his February 19, 2004 sexual encounter with B.V., his 13-year old victim.

Reviewing this evidence "in the light most favorable to the government as verdict winner," <u>Applewhaite</u>, 195 F.3d at 684, at the outset there is ample evidence to permit the jury to conclude that Crudupt engaged in some type of sexual encounter with a 13- year old girl on February 19, 2004. Indeed, the evidence at trial showed that Crudupt and the victim both acknowledged that they indulged in sexual contact, although they disputed the precise nature of that contact. Moreover, the statements of Crudupt and his victim were independently confirmed by other witnesses, who described a sexually compromising encounter between the defendant and his victim in a motel room, and detailed her subsequent reports that Crudupt had made sexual advances to her.

Given this strong evidence supporting a finding that Crudupt indulged in some form of sexual activity with a minor child, the jury could reasonably have found Crudupt guilty of the specific offense of involuntary deviate sexual intercourse by simply accepting his version of these events, as reported by Trooper Noonan in Crudupt's March 19, 2004 confession to the state police. In that confession Crudupt

denied raping his victim, while conceding that he took this 13-year old girl to a local motel and paid her to perform oral sex upon him.

If the jury believed Crudupt's account of this incident, then Crudupt is guilty of involuntary deviate sexual intercourse under 18 Pa. C.S. § 3123, which defines the crime of involuntary deviate sexual intercourse in the following terms:

> **(a) Offense defined.--**A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:
>
> (7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S. § 3123(a)(7).

"Deviate sexual intercourse", in turn, is defined to include acts of oral sex. 18 Pa.C.S. § 3101. Given this unambiguous statutory text, and Crudupt's admission that, as a 42-year old man, he took a 13-year old girl to a motel and paid her to perform oral sex on him, his conduct clearly fell within the class of sexual abuse of minors forbidden under Pennsylvania law as involuntary deviate sexual intercourse. Therefore, Crudupt's complaint that the jury convicted him of what he admitted to doing to this girl has no merit.[1] Indeed, the state courts have previously considered,

---

[1]At bottom, it appears that Crudupt is alleging that he should be acquitted because the jury may not have found the victim, who described this incident as a rape, to be fully credible concerning the specific details of this sexual encounter. There are three ready rejoinders to this argument. First, it is the province of the

and rejected, Crudupt's challenges to the sufficiency of the evidence in this case. Those rulings, denying Crudupt's efforts to set aside the jury's verdict, are wholly consistent with the evidence, and completely congruent with Crudupt's confession. Therefore, Crudupt has shown neither an error in law, nor a clearly erroneous factual finding by the state courts, and his conviction for the crime he admitted to committing should stand. 28 U.S.C. § 2254(d) and (e).

## 2. Crudupt's Complaints About the Commonwealth's Closing Argument Do Not Justify Habeas Relief

In his petition Crudupt renews yet another issue which he has thoroughly litigated in the state courts. Specifically, Crudupt complains that the prosecutor engaged in misconduct in his closing argument to the jury. This contention is a reprise of a theme which has played out throughout this case. At trial, as part of his defense strategy Crudupt endeavored to vigorously challenge the credibility of the Commonwealth's witnesses, and attempted to sow seeds of doubt by highlighting contradictions in their statements, including contradictions regarding the location of the motel where this alleged assault took place. (Doc. 7, Exs. 8-9, at 116-123.)

_____

jury to decide who is believable, and whose testimony to credit. Second, in this case the jury made that assessment and acquitted Crudupt of rape. Third, as we have noted, the jury's verdict in this case convicting Crudupt of involuntary deviate sexual intercourse is fully justified given his own admissions that he paid a 13-year old to perform oral sex on him. Thus, there is simply no merit to this claim.

Crudupt took this position even though the evidence showed that, while he admitted to engaging in sex acts at a local motel with a 13-year old girl, like every other witness at trial, Crudupt was also confused about the precise location of the motel. (Id. at 91)

The defense further emphasized this theme in its closing argument to the jury arguing this confusion as to location as grounds for harboring a reasonable doubt in this case, a defense strategy which led the Commonwealth to argue over Crudupt's objections that the precise location of the motel was irrelevant, provided the jurors found that beyond a reasonable doubt, and consistent with the statements of both Crudupt and the victim, that a sexual encounter occurred at some Monroe County motel in February 2004. (Id. at 139-140.)

Thus, Crudupt's contention that this closing argument was improper is not new. Quite the contrary, this claim was squarely presented to the state courts, and was expressly rejected by those courts, which found nothing improperly prejudicial about the Commonwealth's remarks in this case. (Doc. 9, Ex. 5.)

We concur in this legal and factual finding by the state courts, and therefore recommend that Crudupt's claims regarding this closing argument be denied. See 28 U.S.C. § 2254(d) and (e). In this regard, we note that the evidence in this case reveals two things: Absolute agreement between Crudupt and his victim that they engaged in some sort of sexual activity in a motel on February 19, 2004, coupled with absolute

confusion on the part of both the victim and her abuser regarding both the precise location of that motel and the precise nature of the sexual activity.

At trial, Crudupt endeavored to take advantage of this shared confusion by all witnesses regarding the location of this sexual assault, presenting testimony contradicting the recollection of government witnesses that the incident occurred at the Super 8 Motel in Stroudsburg, and arguing this factual confusion to the jury as a basis for discrediting this witness testimony. It is in response to this defense that the Commonwealth made the statements which Crudupt now claims were misconduct warranting habeas relief.

In this context we find no misconduct in the Commonwealth's closing, which simply responded to a defense argument that sought to focus juror attention on a disputed detail in this case, rather than on the pivotal question of Crudupt's sexual contact with a minor. In any event, even if the Commonwealth's closing argument was viewed as questionable, that argument came as an invited reply to the defense assertions at trial. As an invited reply, this closing argument does not raise the kind of fundamental concerns which justify habeas relief, a fact which has been repeatedly recognized by the courts. See, e.g., Fahy v. Horn, 516 F.3d 169, 198-202 (3d. Cir. 2008)(habeas petition denied with respect to prosecutor comments which were an invited response to defense argument); Brown v. Folino, No. 03-4950, 2004 WL

1211946 (E.D. Pa. May 28, 2004)(same); <u>Brown v. Chesney</u>, No. 03-3821, 2004 WL 619944 (E.D. Pa. March 16, 2004)(same). Therefore, Crudupt's claims concerning the closing argument in this case, which were thoroughly considered and rejected by the state courts, should be rebuffed by this Court as well.

### 3.     Crudupt Was Effectively Represented  By Counsel At Trial

Finally in his petition Crudupt argues that his conviction was a product of ineffective assistance of counsel at trial. This claim, like many of the other contentions advanced by Crudupt, has already been considered and rejected by the state courts which disposed of a wide array of ineffective assistance of counsel claims advanced by Crudupt, resolving many of Crudupt's disputed claims regarding the effectiveness of counsel on credibility grounds, finding that Crudupt's factual assertions, which were contradicted by his counsel, lacked credibility.  (Doc. 1, Ex. A.) The state trial judge went on to specifically reject the two ineffectiveness claims which Crudupt asserts in this petition; namely: (1) Crudupt's assertion that counsel was ineffective for failing to seek a bill of particulars precisely identifying the location of the motel where this sexual encounter occurred; and, (2) Crudupt's assertion that counsel was ineffective for failing to play the tape recording of his conversation with the victim which Crudupt suddenly produced at trial.

Given this prior state litigation of these precise issues we must now assess Crudupt's current federal ineffective assistance of counsel claims by determining whether the state courts' application of the Supreme Court's <u>Strickland</u> standard for judging the competence of counsel was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. §2254(d)(1); or, (2) was "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. §2254(d)(2). <u>See, e.g.</u>, <u>Roland v. Vaughn</u>, 445 F.3d 671, 677-78 (3d. Cir. 2006), (applying § 2254 (d) standard of review to ineffectiveness claim analysis); <u>James v. Harrison</u>, 389 F.3d 450, 453-54 (4th Cir. 2004)(same). If the state courts have properly applied the <u>Strickland</u> test to the conduct of counsel in this case, then the judgment of those courts should not be disturbed on habeas review. <u>Id</u>.

Moreover, in weighing a claim of ineffective assistance of counsel, the Supreme Court has cautioned us that a petitioner like Crudupt must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance. With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential, " <u>Strickland v. Washington</u>, 466 U.S. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>.

Judged against these standards, Crudupt's claims of ineffective assistance of counsel simply fail. First, with respect to Crudupt's claims regarding the failure to seek a bill of particulars, we note that in the past criminal defendants like Crudupt have frequently cited the failure of counsel to seek a bill of particulars as grounds for finding counsel to be ineffective. Yet, such invitations, while often made, are rarely embraced by the courts which find that such decisions fall well within the broad discretion conferred on counsel, and do not rise to the type of prejudicial error required under Strickland. See, e.g., Baker v. Klotoski, No. 08-4722, 2009 WL 650353 (E.D. Pa. March 13, 2009); Wishnefsky v. Meyers, No. 030417, 2005 WL 1498502 (M.D. Pa. June 22, 2005); Mandelaka v. Snyder, No.. 96-457, 1998 WL 299360 (D.Del. May 22, 1998); Commonwealth v. Davis, 368 A.2d 260 (1977)

In this case the state courts have already expressly found that this alleged failure to secure a bill of particulars did not prejudice the defense or cast doubt upon the fairness of the trial. Given the shared confusion exhibited by all of the parties and witnesses on this particular issue regarding the precise motel where this sexual encounter took place, we agree with this finding. Indeed, a motion for bill of particulars would likely have undermined the effectiveness of this defense at trial by putting the Commonwealth on early notice that this discrepancy was a central issue for the defense. Therefore, in accordance with the findings made by the state courts

here, and the weight of authority which rejects the view that the failure to request a bill of particulars renders counsel constitutionally ineffective, we recommend that Crudupt's claims of ineffective assistance of counsel premised upon the failure of counsel to request a bill of particulars be denied.

Finally, in his petition Crudupt raises one other claim of ineffectiveness by his trial counsel which merits brief comment. Specifically, Crudupt complains that counsel was ineffective for failing to play a tape of a conversation between Crudupt and the victim, in which the victim allegedly solicited money from Crudupt in exchange for oral sex. (Doc. 1, Ex. B.)

With respect to this claim, the pertinent facts can be simply stated: Following jury selection, Crudupt for the first time presented his counsel with previously undisclosed evidence that he had in his possession, audio tapes which he claimed were recordings of the victim discussing going to a motel room to engage in sex acts. While Crudupt's description of the genesis and provenance of these tapes changed over time, strained credulity, and could not be separately corroborated by counsel, basically, Crudupt claimed that the tape had been made without the victim's knowledge at the time of the incident, and that Crudupt discovered the tapes three weeks after the incident but inexplicably elected to hide their existence from his own counsel until jury selection. Confronted by this last minute production of evidence, defense counsel

acted prudently and with dispatch, making a motion *in limine* to allow him the option

to use the evidence in his case. While this motion which was granted, counsel made

a strategic judgment not to introduce the tapes in evidence in light of the questions

counsel had relating to their authenticity and last minute production by Crudupt. This

strategic judgment was reviewed by state trial and appellate courts, which both agreed

that counsel's strategic choice fell well within the broad discretion conferred on

defense attorneys under Strickland. (Doc. 1, Ex. A, Ex. B.)

We concur. Indeed there are several reasons why this particular claim lacks

merit. First, in light of the thorough treatment this issue has received in the state courts

we cannot say that the state courts' application of the Supreme Court's Strickland

standard to this judgment by counsel was either: (1) "contrary to" or involved an

unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1);

or, (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C.

§2254(d)(2). See, e.g., Roland v. Vaughn, 445 F.3d 671, 677-78 (3d. Cir. 2006)

(applying § 2254 (d) standard of review to ineffectiveness claim analysis); James v.

Harrison, 389 F.3d 450, 453-54 (4th Cir. 2004)(same). Since the state courts properly

applied the Strickland test to the conduct of counsel in this respect, we should not now

disturb those judgments on habeas review. Id.

Second, Crudupt cannot now be heard to complain about the choices made by his trial counsel, since he is largely responsible for the hurried nature of those choices because of his own misconduct in concealing this evidence from counsel until after jury selection. In such instances, where the defendant fails to provide counsel with complete, timely and accurate information, courts typically decline post-conviction invitations to criticize the competence of the choices forced on counsel by their client's misleading conduct. See. e.g., Moore v. Marr, 254 F.3d 1235, 1243 (10th Cir. 2001); Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997).

More fundamentally, Crudupt's complaints fail because it is apparent that trial counsel's decision to refrain from using the tapes at trial represented a seasoned, mature and well-founded strategic judgment. As counsel and the state courts have noted, any attempt to introduce these tapes at trial would have required their authentication and some discussion about their belated production, factors which would have doubtless reflected unfavorably upon Crudupt in the eyes of a jury.

Moreover, the tapes, which are described by the state courts as reflecting a conversation in which "the victim was soliciting [Crudupt] for money in exchange for oral sex," (Doc. 1, Ex. B) would have had at least two other predictable, profound and adverse consequences for Crudupt if they were played at trial. First, the tapes seem to graphically confirm that Crudupt and the victim were traveling to the motel on

February 19, 2004, for the purpose of engaging in oral sex. Thus, the tapes actually corroborate in a compelling way Crudupt's confession regarding his illegal sexual contact with this 13-year old girl, and are highly inculpatory. Finally, Crudupt's act of secretly recording a conversation with a 13-year old girl regarding paying that child to perform oral sex on him has such a reptilian quality to it, and speaks in such a profound and disturbing way to Crudupt's lack of a moral compass, that counsel doubtless recognized that the dangers of this evidence before a jury far outweighed its marginal benefits at trial.

In short, Crudupt's trial counsel correctly recognized the dilemmas created by his client's concealment of this evidence until trial. He then properly assessed the marginal utility of this evidence against its potentially powerful prejudicial impact. His judgment in this regard fell well within the range of professional judgment permitted by the courts, and the soundness of those tactical choices has been upheld by every court which has considered these choices. Therefore, these tactical decisions by counsel do not provide grounds for Crudupt to set aside this conviction.

## IV.    Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the  Response in Opposition to this Petition, **IT IS RECOMMENDED** that the Petition be **DENIED**

and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of January, 2010.


*S/Martin C. Carlson*                    
**United States Magistrate Judge**